IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| **Jesse R. Lance**, | Civil Action No. 9:09-2649-SB-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **S.C. Johnell Sparkman, John Richards and Cindy Richards**, | |
| Defendants. | |

This action has been filed by the Plaintiff, pro se, asserting claims for malicious prosecution, racial discrimination, and defamation.[1] One of the three remaining Defendants, Johnell Sparkman, filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 16, 2010.[2] As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 21, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response.



---

[1] Pursuant to previous orders of the Court, numerous individuals and entities originally named as Defendants have already been dismissed as party Defendants in the case. See Court Docket Nos. 16, 46.

[2] The remaining two Defendants, John Richards and Cindy Richards, have not filed responsive pleadings in the case. But see Court Docket Nos. 26, 27 [Certificates of Service].

1

Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted. Plaintiff thereafter filed a response in opposition to the motion on January 5, 2011. The Defendant's motion is now before the Court for disposition.[3]

**Background and Evidence**

Plaintiff alleges in his verified complaint[4] that sometime in 2004/2005 the Defendant Cindy Richards told him that she and fellow Defendant John Richards were having tax problems; specifically, that John Richards owed the Internal Revenue Service (IRS) in excess of Seventy Eight Thousand ($78,000.00) Dollars. Plaintiff alleges that he quoted Cindy Richards a fee of ten (10%) percent of the amount of tax liability he kept the Richards from paying, and that he would need a check for Nine Thousand ($9,000.00) Dollars to cover the tax liability that he would save together with his tax preparation fees. Plaintiff alleges he also told the Richards he needed a power of attorney to work with the IRS, and that after he received all that he had requested he started to work on their tax case.

Plaintiff alleges that during the later part of 2005 he "removed" the tax liability John Richards owed the IRS, and contacted John Richards about getting paid. Plaintiff alleges that John Richards refused to work out a payment plan with him, so Plaintiff deposited the Nine Thousand

---

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant Sparkman has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a *verified* Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint as evidence in issuing a recommendation in this case.



($9,000.00) Dollar check he had received from Richards in his account at Carolina First Bank. Plaintiff states that he did not know if the check was good or not, but alleges that if it came back insufficient funds, his plan was to take the matter to a County Magistrate. Plaintiff alleges he went back to Carolina First the day after he had deposited the check, was advised that the check was good, and that he then withdrew Eight Thousand Five Hundred ($8,500.00) Dollars. However, Plaintiff alleges that a "couple" of days later he received a call from Nan Leviner (a previously dismissed Defendant) telling him that she was going to the police department because the check he had deposited was no good. Plaintiff alleges that a few days later he received a call from the Defendant Sparkman (a police officer) asking him to come down to the police department. Plaintiff alleges that he then went to the police department and explained what had happened, following which Sparkman arrested him for check fraud and forgery.

Plaintiff alleges that he did not know John Richards' account had been closed, and that Carolina First "had to [have] had a Racist set-up against me on this $9,000.00 - dollars check that I deposit, because about 2 - months prior I deposit a $1,000.00 - dollar check and they did not let me get any cash funds, until they knew the check was good." Plaintiff alleges that he has been fighting racism in Georgetown County for "thirty years", and that today "unsuspecting Blacks are used to carry - out the Racism." Plaintiff alleges that his criminal case remained pending for two years, during which he attended role calls, but that his case was ultimately dismissed. See generally, Plaintiff's Complaint. Plaintiff has attached as exhibits to his complaint a copy of the check at issue, a power of attorney, a letter from Plaintiff to the Georgetown Police Department dated December 4, 2005, and a letter from the prosecutor dated October 18, 2007 (addressed to the Richards) noting that the charges against Plaintiff had been nolle prossed.

3



In support of summary judgment in the case, the Defendant Sparkman has submitted an affidavit wherein he attests that he is an investigator with the City of Georgetown Police Department. Sparkman attests that on or about October 25, 2005, the police department received a complaint from Carolina First Bank, following which Officer John Tisdale interviewed Nan Leviner, the bank's Manager. Sparkman attests that the matter was then turned over to him for further investigation, and that the investigation revealed that on October 17, 2005, Plaintiff deposited a Nine Thousand ($9,000.00) Dollar check at Carolina First Bank, and then the next day withdrew Eight Thousand Five Hundred ($8,500.00) Dollars from his Carolina First account. Sparkman attests that the check was written to Plaintiff as "J. L. Income Tax & General Acct.", signed by John Richards, and dated October 17, 2005, the date of deposit.[5]  See Court Docket No. 1, p. 10. Sparkman attests that the account on which the check was written was closed, but that by the time Carolina First Bank discovered the $9,000.00 check was drawn on a closed account, Plaintiff had already with drawn $8,500.00, leaving his account with a negative balance of Eight Thousand Three Hundred Fifty Five and 32/100 ($8,355.32) Dollars.

Sparkman attests that, as part of the investigation, he reviewed the documents provided by Carolina First Bank and also interviewed Tommy Rogers, who was in charge of security for Carolina First Bank. Sparkman attests that Leviner advised that she had contacted the Plaintiff several times and informed him that the check he had deposited was not drawn on a valid account, but that Plaintiff had been uncooperative and stated that it was not his problem. Sparkman attests that he also interviewed John Richards, who indicated that he had given Plaintiff a check for

---

[5]The Affidavit says "2010", which is an obvious typographical error.



9:09-cv-02649-SB-BM      Date Filed 02/08/11      Entry Number 62      Page 5 of 11

collateral in exchange for Plaintiff eliminating Richards' tax debt, and that he had told Plaintiff the check was not any good and was from a closed account. Richards advised Sparkman that Plaintiff had responded that this was fine as the check was only for collateral. Richards also told Sparkman that he had made about Nine hundred ($900.00) Dollars in installment payments to the Plaintiff, but after he discovered from another accountant that Plaintiff had not gotten his tax debt extinguished as promised, Richards had refused to make any further payments to the Plaintiff.

Sparkman attests that he interviewed Plaintiff on or about November 10, 2005, and that during this interview Plaintiff admitted he had himself written the date on the check prior to deposit. Sparkman attests that Plaintiff also gave him a handwriting sample, and that he subsequently received a report from SLED on September 12, 2005 concluding that the handwriting on the power of attorney[6] in question belonged to the Plaintiff.

Sparkman attests that, based on his investigation, he believed there was probable cause to charge Plaintiff with forgery and check fraud in violation of S.C. Code Ann. §§ 16-13-10 and 34-3-110,[7] respectively, and that on November 30, 2005 he submitted affidavits to the Municipal Judge for the City of Georgetown, who issued warrants charging Plaintiff with check fraud and forgery. Sparkman attests that Plaintiff was served with the warrants on December 3, 2005, and the matter was turned over to the Solicitor's Office. Sparkman attests that thereafter the Solicitor's Office was

---

[6] The affidavit says "check", but the SLED report actually refers to the power of attorney, not the check. Plaintiff wrote the date on the check, while he is alleged to have signed the Richards' signature on the power of attorney.

[7] Under S.C. Code Ann. § 34-3-110, it is a crime to defraud a federally chartered or insured financial institution or to obtain monies by means of false or fraudulent pretenses, representations, or promises. See also S.C. Code Ann. § 16-3-10.

5



in charge of the investigation.  See generally, Sparkman Affidavit.

The Defendant has also submitted a copy of the police file in this matter, which includes copies of the affidavit and arrest warrants, the service document, copies of the investigative reports and arrest reports, a copy of the SLED forensic reports, a copy of the investigation activity report, and a copy of the check in question.

Plaintiff has attached several exhibits to his response in opposition to the Defendant's motion.[8] Plaintiff has submitted copies of two account statements from the Internal Revenue Service, as well as copies of claim approval letters from the Internal Revenue Service.  Plaintiff has also submitted copies of the affidavits and warrants issued by the Municipal Court, a copy of his bond document, a copy of a power of attorney, a copy of the check at issue, and a copy of a contract purportedly between Plaintiff and John and Cindy Richards.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).  Further, while the Federal Court is charged with liberally construing

---

[8]Although these documents have not technically been properly authenticated for use as evidence in this case, the Defendant has not objected to the Court's consideration of these documents.

6



a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case. As a police officer, the Defendant Sparkman is subject to suit for damages in this individual capacity under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. at 71; Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). However, although subject to suit under § 1983, Plaintiff has failed to submit sufficient evidence to give rise to a genuine issue of fact as to whether the Defendant is subject to liability for having violated his constitutional rights.

First, with respect to Plaintiff's claim for malicious prosecution, lack of probable cause is a requirement to prevail on such a claim. Lambert v. Williams, 223 F.3d 257, 260-261 (4th Cir. 2000) [claim for malicious prosecution requires a showing that the initiation or maintenance of a proceeding against the plaintiff was without probable cause to support it and a termination thereof occurred in favor of the plaintiff][9], cert. denied, 531 U.S. 1130 (2001); cf. Jordan v. Deese, 452 S.E.2d 838, 839 (S.C. 1995). In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest, irregardless of whether or not an

---

[9]Defendant does not contest for purposes of summary judgment that the criminal case against Plaintiff was resolved in Plaintiff's favor by being nolle prossed.



arrestee is ultimately found to be guilty or innocent of the criminal charge itself; Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996); White v. Coleman, 277 F.Supp. 292, 297 (D.S.C. 1967); and "[t]o prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating [the law]". Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). Plaintiff has failed to make any such showing.

The evidence before the Court shows that the Georgetown Police Department received a complaint about the Plaintiff from Carolina First Bank, and that during the investigation of this Complaint the Defendant was advised by the bank manager that Plaintiff had deposited a Nine Thousand Collar check on an account that was closed and had then withdrawn Eight Thousand Five Hundred dollars from his account the following day. The Defendant was further advised that when Plaintiff was told that the check he had deposited was not valid, Plaintiff refused to return the money to the bank, saying that it was not his problem. See Exhibits, Court Docket Nos. 56-2; 56-3, p. 4. The Defendant interviewed John Richards, who advised that he had told Plaintiff the check was not any good and was from a closed account; see Exhibit, Court Docket No. 56-2, p. 2; and the Defendant had also received a SLED report indicating a strong probability that Plaintiff signed the Richards' names on the a power of attorney. See Exhibit, Court Docket No. 56-3, pp. 12-13. While Plaintiff argues that he told Sparkman during his interview that he had a valid power of attorney and that John Richards did not tell him that the check he had provided had been written on a closed account, the fact that Plaintiff denied these allegations does not mean that the Defendant lacked probable cause to seek charges against him. Taylor, 81 F.3d at 434 [In assessing the existence of probable cause, courts examine the totality of the circumstances known to an officer at the time of the arrest].

Plaintiff has provided no evidence whatsoever to show that John Richards did not tell

8



Sparkman that Plaintiff knew the check at issue was not any good, nor has he provided any evidence to dispute Defendant's evidence showing that SLED had concluded Plaintiff had forged the Richards' signatures on the power of attorney and that Plaintiff had been advised by the bank that the check he had deposited was no good and Plaintiff refused to return the money. Therefore, Plaintiff has failed to establish a genuine issue of fact as to whether the initiation or maintenance of the proceeding against him was without probable cause, and his malicious prosecution claim is subject to summary judgment. Lambert, 223 F.3d at 261 [claim for malicious prosecution requires a showing that the initiation or maintenance of a proceeding against the plaintiff was without probable cause to support it]; Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998)[Probable cause exists when the facts and circumstances are sufficient to warrant a prudent person to believe that the suspect has committed an offense].

With respect to Plaintiff's other claims, it appears from a plain reading of the Complaint that Plaintiff's allegations concerning race discrimination and/or defamation were intended to be asserted against Defendants who have already been dismissed. In any event, as was noted in the previous Report and Recommendation issued in the case; see Court Docket No. 42; Plaintiff does not even set forth what his race is, nor what race anyone else is. Therefore, any race claim being asserted by the Plaintiff is without merit. Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. Plaintiff has also alleged no defamatory statement by this Defendant. Parrish



9

v. Allison, 656 S.E.2d 382, 388 (S.C. Ct. Apps. 2007)[That a Defendant made a false and defamatory statement concerning the Plaintiff is a necessary element for a defamation claim]. Therefore, to the extent Plaintiff had intended to assert either of these two claims against this Defendant, they are subject to dismissal.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that Johnell Sparkman be **dismissed** as party Defendants in this case.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 8, 2011
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

</div>

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



11